### LAVENDER v. DANIEL AND HARMON.

### SAME v. LAVENDER AND DANIEL.

### SAME v. HUMPHRIES.

1. DOWER.—Renunciation of dower by wife of mortgagor on deed of mortgagor to son subsequent to mortgage, son and his mortgagee being parties to foreclosure, bars her of asserting claim of dower in these lands in possession of purchasers at such foreclosure sale, purchasers having no notice that deed to son, absolute on its face, was conditional.

2. EVIDENCE—PAROL—LIFE ESTATE.—A DEED absolute on its face cannot by parol be shown to be a deed conditional, or reserving a life estate, in absence of fraud.

3. REAL ESTATE—TITLE.—The failure to pay the purchase price of lands, or to perform a condition subsequent, does not divest a grantee of his estate in lands so bought.

4. DOWER—WAIVER—BURDEN OF PROOF.—Acceptance by widow of distributive share in estate of her husband bars her right of dower in aliened lands, whether she thereby intends or not to waive her right to dower; and the burden of proof is on her to show that she has been misled or misinformed as to the condition of her husband's estate before making the election. *Hill* v. *Gary,* 45 S. C., 91, *distinguished from this.*

Before BUCHANAN, J., Cherokee, September, 1899. Reversed.

Three petitions by Polly Lavender in probate court of Cherokee County for dower against (1) C. J. Daniel and W. Edward Harmon; (2) D. R. Lavender and W. J. Daniel; (3) W. T. Humphries. From decree of Circuit Court reversing decree of probate court, the defendants appeal.

*Messrs. Simpson & Bomar,* for appellants, cite: *Parol*

*evidence not competent to show that deed was conditional:* .53 S. C., 483; 15 S. C., 34; 18 S. C., 606. *The renunciation here bars her right of dower:* 49 S. C., 437; 51 S. C., 451.

*Mr. J. C. Jeffries,* contra, cites: *As to admission of parol evidence in regard to deeds:* 26 S. C., 304; 12 S. C., 139; 2 Hill. Ch., 335; 2 Hill., 404; 35 S. C., 537; 24 S. C., 597. *Failure of son to perform conditions of conveyance of land works forfeiture of his estate therein:* 55 Pac., 629; 41 Wis., 219; 24 Ore., 251; 47 N. W., 768; 46 Wis., 385; 3 T. M. Mon., 329; 13 Ohio St., 49; 4 Port., 628. *Renunciation on son's deed only runs with it:* 55 Md., 42; 17 Johns., 167; 3 Metc., 40; Rice Eq., 158; 11 Ill., 384; 2 Hill. Ch., 250; 30 Metc., 182.

July 3, 1900. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. These three cases, all growing out of the same state of facts and involving the same principles of law, were heard and will be considered together. Some time in February, 1899, Polly Lavender, the respondent herein, filed a petition in each of the three cases above stated, against the defendants therein, as parties in possession of different parcels of the land, in the court of probate, for her dower in said land, alleging that she was the widow of one George Lavender, who died on the 8th of April, 1897, having been seized during coverture of said land. The defendants answered, claiming that the petitioner was barred of her dower: 1st, by the fact that she had renounced her dower on a deed executed by said George Lavender on the 21st of March, 1888, conveying the same to his son, P. C. Lavender; and 2d, because the petitioner had accepted her distributive share of her deceased husband's estate.

At the trial it appeared in evidence that the said George Lavender, on the 15th of February, 1883, had executed a mortgage on the said lands to one Lewis Clary, prior to the date of the deed to his son above referred to. Subsequently,

but at what time does not appear, an action was commenced by one Thomas McCraw, as administrator of said Lewis Clary, against the said George Lavender, for the foreclosure of said mortgage, to which action the said P. C. Lavender and D. R. Lavender, also a son of the said George, were also made parties defendants, as persons claiming some interest in the said land. That action culminated in a judgment in favor of the plaintiff, and by an order of the late Judge Norton, bearing date the 14th April, 1890, the land was directed to be sold; and on saleday in November, 1890, the land was sold, and bought by the defendants, C. J. Daniels, D. R. Lavender and W. T. Humphries (the other defendants in the two cases first named, being, as we suppose, parties in possession as tenants or otherwise), who divided the land amongst them. The proceeds of this sale were applied, first, to the costs of the action, McCraw, as the administrator of Clary, against George Lavender and others, and next to the mortgage in favor of Clary, leaving balance in the hands of the master. The master made his report on the sale, which was confirmed, and the deeds from the master to the defendants, C. J. Daniel, D. R. Lavender and W. T. Humphries, conveying to them the premises out of which dower is claimed, were offered in evidence. It further appears in evidence that P. C. Lavender, after his father had conveyed to him the land in question, had executed a mortgage on the same to one R. S. Lipscomb, bearing date the 15th April, 1889, to secure the payment of a note for $800. It also appears that one M. Bonner had set up a claim, as judgment creditor of George Lavender, to the balance in the hands of the master; whereupon it seems that both Lipscomb and Bonner were made parties to the case of McCraw, as administrator of Clary, against George Lavender and others, and an order was passed referring it to the master to inquire and report to whom the balance in the hands of the master should be paid. The master made his report, to which all parties consented, recommending that "the costs of this action—that is, costs of officers, $25 for Bonner's attor-

neys—be first paid out of the fund in hand, and that the sum of $500 be next paid to M. Bonner or his attorneys, and that the sum of $199 be paid to R. S. Lipscomb or his attorneys, and that the balance be paid to George Lavender or his attorneys." Subsequently, it appears from the evidence, a compromise agreement between P. C. Lavender and George Lavender was made, by the terms of which "all monies left after the payment of the sum agreed to be paid to M. Bonner and the mortgage of R. S. Lipscomb, should be equally divided between George and P. C. Lavender," and the evidence shows that this arrangement was carried out.

To sustain the second ground upon which the defendants claim that the dower was barred, the papers of the estate of George Lavender were offered in evidence, "which showed that D. R. Lavender was administrator of the estate, and made settlement thereof in the probate court of Cherokee County on the 28th of December, 1898; that on the same day, in accordance with the decree of the probate judge, he paid to Polly Lavender the sum of $27.47, in full of her one-third interest in the estate," to which statement, copied from the "Case," is appended the final decree, setting forth in detail the amounts due to each of the distributees, and adjudging that the administrator shall pay the same. The defendants also offered in evidence the deed from George Lavender to P. C. Lavender, above referred to, covering all the land out of which dower is claimed, upon which is indorsed a formal renunciation of her dower by the petitioner, Polly Lavender. This deed upon its face is an absolute conveyance, and purports to have been executed "in consideration of the sum of $1,600 to me paid by P. C. Lavender," and appears to have been duly recorded on the 15th April, 1889; and they also introduced in evidence the mortgage of P. C. Lavender to R. S. Lipscomb, covering all the land described in the deed from George Lavender to P. C. Lavender, being the mortgage herein above referred to.

The plaintiff, Polly Lavender, was examined in reply, and after saying that D. R. Lavender, the administrator of the

estate of George Lavender, was her son, her testimony pro-
ceeded as follows: "Q. When you received any money from
D. R. Lavender, did you have any notice, or did you think
or know that it would knock you out of your dower interest
in this matter? (The defendants object. The competency
of this question to be reserved until final argument.)    A.
No, sir, I did not.    Q. Before signing any receipt for this
money, did you ask for information? (Defendants object.
Ruling reserved.)    A. Yes, sir.    Q. In consequence of
information you received, did you sign receipt? (Objected
to by defendants.    Ruling reserved.)    A. I did.    Q. Did
you intend by signing the receipt to release your dower in this
matter? (Defendants object.    Ruling reserved.)    A. No.
sir, I did not.    Q. What was the consideration of the deed
from George Lavender to P. C. Lavender upon which you
renounced your dower? (Objected to by defendants.
Ruling reserved.)    A. P. C. Lavender was to take the land,
pay the debt, and keep us up, as I understood it, was why I
signed dower in said deed; would not have done it otherwise.
(All this objected to.    Ruling reserved.)    Q. Have never
renounced dower in that property to any one else?    Did P.
C. Lavender pay off the debts and support you and husband
on the place, as he agreed to do? (Objected to.    Ruling
reserved.)    A. No, sir; he stayed there one year, and the
land was sold for the debts.    *Cross-examination:* Witness
was present in the probate judge's office for Cherokee
County some time ago, and D. R. Lavender paid me some
twenty-odd dollars—part of my husband's estate."    Upon
this testimony the judge of probate heard these cases, and in
his decree sustained both of the grounds upon which the de-
fendants claimed that the right of dower had been barred,
and he rendered judgment dismissing the petitions in each
of the three cases.    From this judgment the plaintiff ap-
pealed to the Circuit Court upon the several grounds set out
in the "Case," and the same came on for hearing before his
Honor, Judge Buchanan, who reversed the judgment of the
probate court, and remanded the cases to that court for such

9—58

proceedings as are necessary to admeasure to the petitioner her dower in each of the three cases.

From this judgment of the Circuit Court the defendants appealed upon the several grounds set out in the record, which we do not deem it necessary to state in detail, as we propose to consider the several questions made thereby. The exceptions raise two general questions: 1st. Whether the renunciation of dower indorsed upon the deed from George Lavender to P. C. Lavender bars the plaintiff's claim of dower in the land covered by that deed? 2d. Whether the plaintiff, by receiving her distributive share of her deceased husband's estate, has barred her claim of dower?

As to the first question, it seems to us clear that it must be answered in the affirmative. When the plaintiff executed her renunciation of dower, indorsed upon the deed from her husband to her son, P. C. Lavender, she undoubtedly barred herself of any claim of dower in the land embraced in that deed as against P. C. Lavender, and all persons claiming under or through him; and when the land was sold under the proceedings in the action brought by Thomas McCraw, as administrator of Lewis Clary, to which the said P. C. Lavender was a party, there can be no doubt that the purchasers at that sale took their title freed from the plaintiff's claim of dower. As we understand it, the rule is well settled that a purchaser at a judicial sale acquires the title and interest of all the parties to an action under which such sale is made; and if P. C. Lavender took his title freed from the plaintiff's claim of dower, then the purchasers at such sale acquired all his right, title and interest, and they also held their title free from the plaintiff's claim of dower. But it is contended that the deed from George Lavender to P. C. Lavender, though absolute on its face, was, in fact, conditional merely; and that P. C. Lavender, having failed to perform the condition upon which he was to take the title under that deed, lost all right to or interest in the land, as well as all right to any interest that he might otherwise have acquired under the renunciation of dower

indorsed upon said deed by the plaintiff before the land was
sold under the proceedings in the action of McCraw, as
administrator of Clary, against George Lavender and P. C.
Lavender; and, therefore, the purchasers at such sale (who
are the defendants in these actions) took their titles subject
to the plaintiff's claim of dower.    Even if this could be con-
ceded, while it might have the effect of protecting the plain-
tiff from the effect of her renunciation of dower indorsed
upon the deed from George Lavender to P. C. Lavender, if
she were asserting her claim of dower *against the said P. C.
Lavender,* we do not see how it is possible that it should
effect the rights of third persons, purchasers at a judicial
sale of land, to which the records showed that one of the
parties held the absolute legal title, free from any claim of
dower on the part of the plaintiff, especially when there is
not a shadow of testimony even tending to show that these
purchasers had any notice whatever of this hidden equity,
which the plaintiff now, for the first time, seeks to set up, in
order to avoid the effect of her renunciation of dower, which
was spread upon the records.    Such a doctrine would oper-
ate as a fraud upon such purchasers, and would tend to de-
stroy all confidence in title acquired at judicial sales.    Be-
sides, it appears from the record that the proceeds of the sale
of this land was applied not only to the satisfaction of the
mortgage to Clary, upon which the plaintiff had not re-
nounced her dower, but also to a judgment obtained by one
Bonner against George Lavender, which the Circuit Judge
(incorrectly states was a judgment against P. C. Lavender),
as well as the payment of the balance due upon the mortgage
executed by P. C. Lavender to one Lipscomb, after he ac-
quired the title from his father, and that the balance of the
proceeds of the sale was equally divided between George
Lavender and P. C. Lavender, by agreement between them;
the said Bonner and Lipscomb having subsequently been
made parties to the action under which the sale was made.
So that, practically, the defendants' claim as purchasers at a
judicial sale made for the purpose, not only of satisfying

liens on the land imposed thereon by George Lavender, the original owner, but also for the satisfaction of a mortgage placed thereon by P. C. Lavender in favor of Lipscomb, while he held the legal title to the land under a deed absolute in its terms, with a renunciation of dower indorsed thereon, which was spread upon the records. Now, if the land had been sold under proceedings directly instituted for the foreclosure of a mortgage in favor of Lipscomb, it cannot be doubted that the purchaser at such sale would take his title free from any dower incumbrance, in the absence of any evidence (and there is none here) of notice to Lipscomb and the purchaser at such sale of the hidden equity now sought to be set up by the plaintiff. In such a case the plaintiff would have been remitted for her claim of dower to the surplus of the proceeds of the sale, after satisfying the Lipscomb mortgage. So here it seems to us that, if the plaintiff had any claim at all, it should be upon the proceeds of the sale improperly applied to the satisfaction of liens in favor of which she had not renounced her dower, and that she cannot make any claim on the land in the hands of purchasers of those claiming under them, as the proceeds of the sale under which they bought have, in part at least, been applied to the satisfaction of a lien placed upon the land by the holder of the deed therefor, upon which she has renounced her dower.

But, in addition to this, we do not think it can be conceded that it has been shown by any competent evidence, that the deed from George Lavender to P. C. Lavender, which upon its face was certainly an absolute deed, was, in fact, a mere conditional deed, and that upon the failure of the grantee to perform the conditions, the title never vested in him; and hence the renunciation of dower indorsed thereon amounted to nothing. While it is quite true that the authority cited by respondents' counsel do show that it is competent to introduce parol evidence tending to show that the consideration mentioned in a deed is greater or less than that therein stated, as well as how such consider-

ation is to be paid or satisfied, yet we are not aware of any
case in which it has been held that it is competent by parol
evidence to change the nature and effect of a deed; as, for
example, to convert a deed absolute on its face into a mere
conditional deed, as it was proposed to do in this case.
This can only be done where fraud is alleged and proven;
and in this case there is neither allegation nor proof of
fraud.    See *Latimer* v. *Latimer,* 53 S. C., 483, where it was
held that except where fraud is alleged and proved, it is not
competent to show by parol that a deed purporting to be
based upon *good* consideration, executed for a specific pur-
pose, was based upon *valuable* consideration, and executed
for an entirely different purpose.    It seems to us, therefore,
that the parol testimony of the plaintiff, introduced for the
avowed purpose of showing that the deed from George
Lavender to P. C. Lavender, though absolute on its face,
was intended to be a conditional deed, and that as the con-
dition was not performed, the deed became nugatory, was
clearly incompetent for any such purpose.    But even if that
testimony was competent, we do not think it shows what is
claimed for it.    The Circuit Judge in his decree says: "The
testimony is that the said P. C. Lavender was to pay the
mortgage debt of George Lavender, and support George La-
vender and his wife, the petitioners herein, during their lives
upon the property, and after their death the property was
to be his absolutely."    Now, the only testimony we find in the
record before us is that of Polly Lavender, which we have
copied in full in our statement of the case.    By reference to
that testimony the marked difference between what the wit-
ness testified to and what the Circuit Judge represents the
testimony to have been, may readily be perceived.    But
waiving this, we may remark that, if the testimony be as the
Circuit Judge represents, then it is clear beyond dispute that
such testimony was incompetent.    For if the testimony
tended to show that the conveyance was to P. C. Lavender,
with a reservation of a life estate in the grantor and his wife,
only to become absolute in the grantee upon the death of his

mother and father, then clearly parol evidence was wholly incompetent to effect such an entire revolution in the character and effect of a deed absolute upon its face.

But the real contention on the part of the respondent seems to be that the purpose of this parol evidence was to show that the true consideration of the deed was not the sum of $1,600 mentioned in the deed, but was in fact an agreement on the part of the grantee to pay the debts of his father, and to furnish a support to him and his wife during their lives; for which purpose the parol evidence in question may have been competent. We must, therefore, consider the question under this aspect, and in connection with the further fact testified to by the plaintiff, that this agreement was not complied with by P. C. Lavender. Granting this to be so, the question still remains as to what is the effect of such testimony. The respondent contends that the effect was to convert the deed from an absolute into a conditional one, and that upon the failure of the grantee to perform the conditions, his estate became forfeited, and hence the renunciation of dower indorsed upon the deed at once became nugatory. We are not prepared to assent to such a view. If the real consideration of the deed was the agreement of the grantee to pay his father's debts and provide a support for his father and mother during their lives, how does such an agreement differ in principle from an agreement to pay the specified sum of money as a consideration of the deed? If a person buys land on a credit, and enters into an agreement, whether by note, bond or otherwise, to pay a stipulated sum as the purchase money thereof at a specified time, and fails to perform such an agreement, it never was supposed that he thereby forfeited his title to the land, or even that the land, in the absence of any mortgage, became impressed with any lien, for it is settled by at least three cases in this State, that the doctrine of the vendor's lien for the purchase money, which prevails in England, never was recognized in this State. *Wragg* v. *The Comptroller General,* 2 DeS. Eq., 509; *McCorkle* v.

*Montgomery,* 11 Rich. Eq., 114, and *Morse* v. *Adams,* 2 S. C., 56. Upon the same principle, we do not see how the failure to perform any other agreement entered into as a consideration for a conveyance should operate as a forfeiture of the estate conveyed, in the absence of any provision of the deed to that effect. But even assuming, for the purposes of this discussion only, that this was a conditional deed, as it is called, the next inquiry is, whether the estate conveyed was upon a condition precedent or upon a condition subsequent. The very terms of the conditions show that it was the latter, and not the former, as the obligations which it is claimed the grantee assumed, necessarily implied that he must first be invested with an estate in the land, as he could not otherwise comply with such conditions. If, then, the estate was conveyed to P. C. Lavender upon a condition subsequent, then the mere failure to perform such condition did not, *ipso facto,* divest his estate, which could only be effected by the grantor taking the necessary steps to revest the estate in him. And this it is not pretended was ever done. See *Hammond* v. *Railroad Company,* 15 S. C., at pages 33-34, recognized and followed in the subsequent case of *Kibler* v. *Luther,* 18 S. C., 606. It seems to us, therefore, that under any view that may be taken of the first general question stated above, the Circuit Judge was in error in holding that the plaintiff was not barred of her dower by her renunciation indorsed upon the deed from George Lavender to P. C. Lavender, which was duly spread upon the records.

While this would be conclusive of this appeal, yet, as the second general question has been raised and argued, we will proceed to consider that also, which involves the inquiry as to the effect of the receipt by the plaintiff of her distributive share of her deceased husband's estate. In sec. 1902 of the Revised Statutes of 1893, it is expressly declared that "When a husband dies intestate, and his widow accepts her distributive share in his estate, she shall be barred of her dower in the lands of which he died seized and all of such as he had aliened." Now, as the undisputed

facts are that the husband of plaintiff died intestate, and
that she, on the 28th December, 1898, received her distribu-
tive share of his estate, the case is brought directly under the
provisions of the statute, ánd she is barred of her dower in
the lands.    It is contended, however, and the Circuit Judge
seems to hold, that the election which the plaintiff made to
take her distributive share of her husband's estate was not
made upon full information, and, therefore, she had a right
now to retract such election and assert her claim for dower,
citing the case of *Hill* v. *Gary,* 45 S. C., 91.    That case,
however, differs widely from the present case.    There it
appeared that there never had been any administration upon
the estate of the wife's deceased husband; and hence, as was
said in that case, it was "difficult to understand how the
widow's distributive share óf the estate could have been
ascertained, without which she could not properly be said to
have made any election; for it is well settled that the widow
is (entitled) to have full information of her interest before
she can be held to any election."    Indeed, in that case, there
was no evidence that the widow had ever received a single
dollar out of her deceased husband's estate.    Certainly not,
that she had ever received anything as a part of her distribu-
tive share of her deceased husband's estate.    Here, however,
the undisputed facts are that there was administration upon
the estate of plaintiff's deceased husband; that such estate
had been finally settled in the office of the judge of probate,
and the rights and interests of the several distributees were
finally ascertained and determined by the decree of that
officer, and that she then and there received and receipted for
the amount thus ascertained of her distributive share of her
estate; and neither the plaintiff nor any one of the distribu-
tees, so far as appears, have ever intimated any dissatisfac-
tion with that settlement, until the institution of these pro-
ceedings for dower were commenced about two months
afterwards.    While, therefore, it is quite true that a widow
is entitled to full information as to the condition of her de-
ceased husband's estate before she shall be put to her election

whether she will claim her dower or her distributive share,
yet when she has made her election, and has actually received
the amount of her distributive share as ascertained by the
decree of the judge of probate, and she now comes and asks
the Court to allow her to retract her election, and be permit-
ted to retract the election which she has made, the burden of
proof is certainly upon her to satisfy this Court that she was
deceived or, at least, misled by incorrect or insufficient infor-
mation as to the condition of the estate into making such
election.    Now, the testimony on the part of the plaintiff not
only fails to meet this burden, but rather tends to show the
contrary.    The only testimony which we find in the "Case"
as to this matter, is that of the plaintiff herself, and the
records of the court of probate.    She does say that she
signed the receipt for her distributive share, in consequence
of certain information which she received; but what that
information was, or from whom it was received, she was
not asked, and she does not say.    Indeed, there is not the
slightest intimation in her testimony that she was in any way
misled or deceived by any one as to the condition of the
estate; and as the transaction took place in the office of the
judge of probate, where all the papers of the estate were, it
is difficult, if not impossible, to conceive how she could have
been misled, even if one were disposed to do so, without
imputing to the judge of probate the grossest fraud and
dereliction of duty, of which there is not a semblance of
testimony.    It is true, that the plaintiff does say that she
did not intend, by signing the receipt for her distributive
share, to bar her claim of dower, but as was held in *Buist* v.
*Dawes,* 3 Rich. Eq., 281, the right to dower and "thirds,"
using that word in the sense of the wife's distributive share,
are both legal rights, and the acceptance of the one (*whether
intended as a waiver of the other or not*) is a bar, at law and
in equity, to the claim of the other.    Of course, this propo-
sition is subject to the qualification that where it appears to
the satisfaction of the Court that the widow has been induced
to accept either of these alternative rights by fraudulent or

incorrect representations, the bar will not arise. But that case also shows that where the widow has actually accepted a sum of money in lieu of her dower, or has accepted the amount of her distributive share of her deceased husband, and comes before the Court asking to be allowed to retract the election which she has made, upon the ground that she was induced to make such election by false or incorrect information, she must, before she can be heard, return or tender back the money which she had received; for equity will not allow her, while still holding the fruits of the one alternative, to claim the other inconsistent alternative; and there is no pretense that the plaintiff has done this in these cases. In view of the testimony in relation to this matter, all of which is set out above, it is very difficult, if not impossible, to conceive what warrant there is in the testimony for the conclusion reached by the Circuit Judge, that the plaintiff endeavored to find out whether by accepting her distributive share, she would bar herself of her claim of dower, and from the information which she received, she accepted her distributive share, not intending thereby to waive her claim of dower. In the first place, there is no evidence whatever as to the nature of the information which she received, for she was not asked, and she did not say what it was, or from whom it was received. The conclusion of the Circuit Judge, that the plaintiff tried to find out whether by accepting her distributive share she would bar her claim of dower, is absolutely without any evidence to support it. Besides, the plaintiff, like every one else, is presumed to know the law, and she must be presumed to know what is plainly written in the statute. So, also, the following language, found in the Circuit decree, is without a shadow of testimony to sustain it, and must be based purely upon conjecture: "I do not know who it was advised the petitioner and cannot say how she was advised, but certain it is that her son, D. R. Lavender, was the administrator of the estate of her husband, and he is one of the defendants in this action; and it would have been of interest, at least to him, to have advised his mother

in a manner contrary to her interest, and thus influence her to accept a distributive share of the estate, and thus try to prevent her from recovering dower in the property of which he is an owner." This intimation that a son has practiced fraud upon his mother, is not only without testimony to support it, but is based solely upon the assumption that a son would be willing to practice a fraud upon his mother simply because it was to his interest to do so. Even if human nature be as bad as some seem to suppose it to be, this Court is not willing to make any such assumption, as the well settled doctrine is that fraud cannot be presumed, but must be proved by such testimony as is competent in a Court of justice.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the judgment of the court of probate for Cherokee County be affirmed; to which last named court these cases are remanded for the purpose of having final decrees in each of these three cases entered, dismissing the petitions in each of said cases.

MR. JUSTICE POPE *concurs in the result.*